# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| JAIME CALHOUN,<br><br>                            Plaintiff,<br><br>v.<br><br>OFFICER TERRY BUCK,<br><br>                            Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:18-cv-00299<br><br>Magistrate Judge Dustin B. Pead |

## **INTRODUCTION**[1]

On February 27, 2016, Defendant Terry Buck ("Defendant" or "Trooper Buck") arrested Plaintiff Jaime Calhoun ("Plaintiff or "Ms. Calhoun") and issued a citation for driving under the influence ("DUI") in violation of Utah Code Ann. § 41-6A-502. The charge was subsequently dismissed. Ms. Calhoun now brings this lawsuit pursuant to 42 U.S.C. § 1983, alleging that Trooper Buck did not have probable cause to detain and cite her for DUI after her breath test returned a breath alcohol concentration ("BAC") of .037.

---

[1] The parties in this case consented to United States Magistrate Judge Dustin B. Pead conducting all proceedings, including entry of final judgment. (ECF No. 12.)

This matter is currently before the court on Defendant's motion to dismiss Plaintiff's second amended complaint for failure to state a claim.[2] Trooper Buck also asserts qualified immunity.[3] Oral argument on Defendant's motion was held on February 21, 2019.[4]

## BACKGROUND

The following facts are taken from Plaintiff's second amended complaint[5] and other documents attached to the pleading.[6] A court may "consider attached exhibits and documents incorporated into the complaint, so long as the parties do not dispute the documents' authenticity."[7] The court views the complaint in a light most favorable to Ms. Calhoun.[8]

On February 27, 2016, at approximately 1:15 a.m., Utah Highway Patrol Trooper Terry Buck observed Plaintiff's vehicle on 1200 East 3300 South in Salt Lake City, Utah.[9] A vehicle registration check revealed no insurance on file, and Trooper Buck initiated a traffic stop of

---

[2] ECF No. 36.

[3] *Id*.

[4] ECF No. 43.

[5] ECF No. 32.

[6] Attached documents include: Dash-Cam video (Exhibit A), Police Report (Exhibit B), Search Warrant Application (Exhibit D) and Toxicology Report (Exhibit E).

[7] *Rosenfield v. HSBC Bank, USA,* 681 F.3d 1172, 1178 (10th Cir. 2012) (*quoting Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009)).

[8] *Jordan-Arapahoe, LLP v. Bd. of County Comm'rs,* 633 F.3d 1022, 1025 (10th Cir. 2011).

[9] ECF No. 32 at ¶6.

Plaintiff's vehicle.[10] Ms. Calhoun was the driver and sole occupant of the car.[11] During the traffic stop, Trooper Buck observed:

    a. the odor of alcohol coming from the interior of Plaintiff's vehicle and from Ms. Calhoun's person;[12]

    b. Plaintiff's eyes appeared "glassy";[13]

    c. Plaintiff admitted she had consumed one alcoholic beverage around 10:00 p.m;[14]

    d. Plaintiff's pupils were equal in size, but she did not have "smooth tracking in a cursory check of her eyes;"[15] and

    f. Ms. Calhoun reported that she had taken ibuprofen, but had not taken any medication that would impair her driving.[16]

As a result, Defendant administered Field Sobriety Tests. During the tests, Trooper Buck observed:

    g. during the walk and turn test, Plaintiff "stepped out of the test position, missed heel to toe, stepped off line and raised her arms greater than six inches from her side";[17]

---

[10] *Id.* at ¶¶ 7-9, Exhibit B, "Police Report".

[11] *Id.*

[12] *Id.* at ¶10, Exhibit B.

[13] *Id.*, Exhibit D, "Search Warrant Application".

[14] *Id.*

[15] *Id.*

[16] *Id.*, Exhibit A at 1:23:41, "Dash Camera Footage".

[17] *Id.*, Exhibit B.

  h. Ms. Calhoun "swayed forwad [sic] and backward and during the check for vertical gaze nystagmus almost fell over backwards";[18]

  i. during the ABC test, Plaintiff was unable to recite the alphabet from "D to Q" and stated that she needed to start with the letter A;[19]

  j. Ms. Calhoun was unable to complete the backwards counting test and could not count from 65 to 42 backward;[20] and

  k. during the one leg stand test, Plaintiff "swayed and put her foot down."[21]

  Next, Trooper Buck administered a preliminary breath test (PBT). He observed Ms. Calhoun attempt to deliberately defeat the test by not blowing into the PBT.[22] After three attempts, Ms. Calhoun provided a sufficient breath sample which showed positive for alcohol.[23] Trooper Buck arrested Ms. Calhoun for DUI.[24]

  After arrest, Trooper Buck asked Ms. Calhoun if she needed any items from her vehicle. Ms. Calhoun disclosed there was Xanax in her purse and that she had taken Xanax at

---

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*, Exhibit B, "Arrest Report".

[24] *Id.*

approximately three or four in the afternoon.[25] Ms. Calhoun submitted to a breath test on an Intoxilyzer machine in Trooper Buck's vehicle. The Intoxilyzer returned a result of .037 BAC.[26] After obtaining the Intoxilyzer result, Defendant became concerned that Xanax was a factor in Ms. Calhoun's field sobriety test results.[27] Ms. Calhoun would not consent to a blood draw, so Trooper Buck sought and obtained a warrant. In his application for the warrant, Trooper Buck stated:

> [b]ased upon the SFSTs and the admission of the prescription Drugs I believe there are medications or controlled substances in the subject's body, so I requested a blood test . . . ."[28]

The affidavit further alleged evidence of "[d]riving under the [i]nfluence, in violation of Utah Code Ann. Section 41-6a-502, specifically, the substance [a]lcohol, prescription drugs and controlled substan[ce] [sic]."[29] The court granted the search warrant application and a blood sample was taken and submitted for analysis. Defendant issued Plaintiff a citation for DUI in violation of Utah Code Ann. §41-6A-502, and booked her into the Salt Lake County jail.

---

[25] *Id.* at 28, Exhibit E, "Toxicology Report". According to the Toxicology Report Xanax "is a benzodiazepinprescription drug with CNS depressant effects that may be additive with alcohol or other CNS depressants."

[26] *Id.* at ¶42, Exhibit A at 2:22:50-2:20:40, Exhibit B, Exhibit D.

[27] *Id.* at ¶37, Exhibit A, 2:43:23-2:43:32, Exhibit D at 26 (stating "[b]ased on the SFSTs and the admission of the prescription drugs I believe there are medications or controlled substances in the subject's body so I requested a blood test from the subject. . . .")).

[28] *Id.*, Exhibit D.

[29] *Id*.

Plaintiff's blood sample subsequently tested positive for alcohol (0.03) and Alprazolam (Xanax).[30] On May 4, 2016, the prosecutor dismissed Plaintiff's DUI charge,[31] and several days later the court dismissed the remaining charge for failure to show insurance.[32]

Following dismissal of the criminal charges, Plaintiff initiated this federal action for violation of her constitutional rights pursuant to 42 U.S.C. §1983.[33] On September 5, 2018, Ms. Calhoun filed a second amended complaint alleging claims for illegal detention and malicious prosecution against Trooper Buck.[34]

## ANALYSIS

### I. Standard of Review

To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[35] Section 1983 permits an injured person to "seek damages against an individual who has violated his or her federal rights while acting under color of state law."[36] Standing alone, the statute does not create substantive civil rights; rather, § 1983 serves as a procedural mechanism for enforcement of

---

[30] *Id.*, Exhibit E.

[31] *Id.* at ¶ 58.

[32] *Id.* at ¶ 59; *see* Utah Code Ann. § 41-12A-303.2.

[33] ECF No. 1, ECF No. 2.

[34] ECF No. 32.

[35] *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

[36] *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 459 (10th Cir. 2013).

existing federal and constitutional rights.[37] Where such as here, a defendant asserts qualified immunity, the plaintiff "must allege facts sufficient to show (assuming they are true) that the defendant[ ] plausibly violated [the plaintiff's] constitutional rights, and that those rights were clearly established at the time."[38]

In reviewing a motion to dismiss for failure to state a claim, the court assumes the truth of well-pleaded facts and draws reasonable inferences in a light most favorable to the plaintiff.[39] Conclusory pleadings "are not entitled to the assumption of truth,"[40] and a claim survives only if "there is plausibility in the complaint."[41] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[42]

---

[37] *See Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("[t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.").

[38] *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).

[39] *See Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011).

[40] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[41] *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citations and quotations omitted).
In her opposition brief, Plaintiff cites to case law from Louisiana, Pennsylvania and Tennessee in support of her claim that dismissal should be granted "unless it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ECF No. 39 at 6 (*citing McCray v. Veneman,* 298 F. Supp 2d 13 (2002, DC Dist. Col. 2002)). However, in *Bell Atl. Corp. v. Twombly* the Supreme Court identified the appropriate standard as review for "a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007).

[42] *Id.* (*quoting Ashcroft,* 556 U.S. at 678).

## II. **Failure To State A Claim.**

Ms. Calhoun fails to state a claim under 42 U.S.C. § 1983 for malicious prosecution and illegal detention because her arrest, detention and citation for DUI were supported by probable cause and there was no constitutional or statutory violation.

### a. **Arrest, Detention and Citation for DUI Supported By Probable Cause.**

"Probable cause to arrest exists where, under the totality of the circumstances, a reasonable person would believe that an offense has been committed by the person arrested."[43] Probable cause is assessed using an objective standard and determined at the time of the arrest.[44] "An arrest is not invalid under the Fourth Amendment simply because the police officer subjectively intended to base the arrest on an offense for which probable cause is lacking, so long as "'the circumstances, viewed objectively, justify' the arrest."[45] Under this standard, Trooper Buck is "entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain" Ms. Calhoun.[46]

---

[43] *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012) (citations and quotation omitted); *see also Johnson v. Lindon City Corp.,* 405 F.3d 1065, 1068 (10th Cir. 2005) (*quoting Jones v. City & County of Denver*, 854 F. 2d 1206, 1210 (10th Cir. 1988) ("[p]robable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.")).

[44] *Summers v. Utah*, 927 F.2d 1165, 1166 (10th Cir. 1991) (citations omitted).

[45] *Apodaca v. City of Albuquerque*, 443 F.3d 1286 (10th Cir. 2006) (*quoting Devenpack v. Alford*, 543 U.S. 146, 153 (2004)).

[46] *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir. 2014) (emphasis added).

Ms. Calhoun concedes that prior to administration of the Intoxilyzer breath test, Trooper Buck had probable cause to arrest her for DUI. She asserts, however, that the .037 breath test vitiated any probable cause and therefore Defendant had an affirmative duty to release her. Plaintiff further contends that after obtaining her breath test result Trooper Buck abandoned his acting under the influence of alcohol theory and improperly pursued a drug-related DUI for which there was insufficient probable cause.

At the time of Ms. Calhoun's arrest, Utah's DUI statute stated. in in relevant part:

(1) A person may not operate or be in actual physical control of a vehicle within this state if the person:

> (a) has sufficient alcohol in the person's body that a subsequent chemical test shows that the person has a blood or breath alcohol concentration of .08 grams [of alcohol per 100 milliliters of blood] or greater at the time of the test; [or]
>
> (b) is under the influence of alcohol, any drug, or the combined influence of alcohol and any drug to a degree that renders the person incapable of safely operating a vehicle.[47]

Thus, although Ms. Calhoun's BAC of .037 precluded prosecution under subsection (1)(a) of the statute, it did not vitiate probable cause under subsection (1)(b). Subsection (1)(b) clearly allows for prosecution of a DUI with a BAC below .08, if an individual is under the influence of alcohol, drugs, or both "to a degree that renders the person incapable of safely operating a vehicle."[48] Here, there was sufficient indicia to support the conclusion that Ms. Calhoun was unable to safely operate her vehicle, and the totality of the circumstances gave Trooper Buck probable cause. While Trooper Buck did not observe any unsafe driving, Ms.

---

[47] Utah Code Ann. § 41-6a-502.

[48] *Id.* at 41-6a-502(1)(b).

Calhoun's glassy eyes, the odor of alcohol, admission to drinking, difficulties both physically and cognitively on the field sobriety tests, positive PBT and an admission to taking Xanax provided sufficient probable cause to establish that Plaintiff was under the influence of alcohol, drugs, or both, and incapable of safely operating a vehicle.[49]

In turn, Trooper Buck was not required to believe Ms. Calhoun's qualifications,[50] or pick a specific theory under the statute. Indeed, at the time of arrest, a reasonable officer may not be able to determine whether the indicia of intoxication stem from the use of alcohol, drugs or both. As such, an arrest is considered lawful "as long as probable cause exists for *some* offense."[51]

### b. No Claim For Malicious Prosecution.

The existence of probable cause bars a Section 1983 claim for malicious prosecution.[52] "Where . . no Fourth Amendment violation occurred because the officer possessed probable cause to arrest and charge the individual, 'the inquiry ends and the officer is entitled to qualified immunity.'"[53]

---

[49] *Id*.

[50] *See D.C. v. Wesby,* 138 S. Ct. 577, 592 (2018) ("[I]nnocent explanations--- even uncontradicted ones--- do not have any automatic, probable-cause-vitiating effect."); *see also Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1321 (10th Cir. 2002) ("[T]he arresting officer has no obligation to believe the suspect."). Indeed, Plaintiff's statement that she took Xanax hours earlier, when she made no similar statement about ibuprofen, suggests a self-consciousness about her use that a reasonable officer, under a totality of the circumstances, could interpret as deception supporting probable cause.

[51] *Morris*, 672 F.3d at 1193 (emphasis in original).

[52] *Fernandez v. Perez,* 937 F.2d 368, 371 (7th Cir. 1991) ("The existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution.")).

[53] *Titus v. Ahlm*, 297 F. App'x. 796, 801 (10th Cir. 2008) (unpublished) (*citing Wilder v. Turner,* 490 F.3d 810, 813 (10th Cir. 2007)).

Thus, because Trooper Buck had probable cause, Ms. Calhoun's claim for malicious prosecution must fail.

**c.    Duty To Release.**

The court further concludes that Trooper Buck had no affirmative duty to release Ms. Calhoun after obtaining her .037 breathalyzer result. The Tenth Circuit's decision in *Titus v. Ahlm* is instructive.[54] In *Titus*, the plaintiff was arrested, under New Mexico law, for driving while intoxicated after running a red light, smelling of alcohol, admitting to drinking beer, performing poorly on at least two field sobriety tests and refusing a PBT.[55] Subsequent to his arrest, plaintiff provided a breath test of .02.[56] The police officer then obtained a blood sample and, while the test results were pending, charged plaintiff with driving while intoxicated.[57] Similar to the present case, after the charges were dismissed, plaintiff sued claiming probable cause was vitiated by his breath test result and the officer had an immediate duty to release him.[58]

In affirming the District Court's finding of probable cause, the Tenth Circuit concluded that under New Mexico statute, a driving while intoxicated prosecution could be brought for "'driving while impaired to the slightest degree'" and therefore under a totality of the circumstances "a reasonable officer could have believed that probable cause existed to charge

---

[54] *Titus,* 297 Fed. App'x. at 796.

[55] *Id.* at 798-99.

[56] *Id.* at 799.

[57] *Id.*

[58] *Id.* at 798-99.

11

[plaintiff]."⁵⁹ Further the court determined that the police officer had no duty to immediately release plaintiff because his ".02 did not exonerate him."⁶⁰

This court fails to discern a meaningful distinction between the facts of this case and *Titus*. While Utah's statutory language differs from that of New Mexico, under Utah's statute, Ms. Calhoun's .037 BAC did not preclude a viable prosecution pursuant to subsection (1)(b). Specifically, subsection (1)(b) criminalizes the operation of a vehicle "if the person is under the influence of alcohol influence of alcohol, any drug, or the combined influence of alcohol and any drug to a degree that renders the person incapable of safely operating a vehicle since."⁶¹ As discussed above, Trooper Buck had sufficient evidence to support the conclusion that Plaintiff could not safely operate her vehicle, her .037 BAC did not vitiate probable cause and Defendant had no affirmative duty to release her. ⁶²

### III.    <u>Qualified Immunity</u>

Trooper Buck asserts he is entitled to qualified immunity on Plaintiff's claims. "Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law."⁶³ "Once an individual defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal

---

⁵⁹ *Id.* at 800 (*quoting Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1207 (10th Cir. 2008).

⁶⁰ *Id.*

⁶¹ Utah Code Ann. § 41-6a-502(1)(b).

⁶² *See Bowles v. Rossetti*, 2018 U.S. Dist. LEXIS 99247, *8 (June 12, 2018, D. Utah).

⁶³ *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (quotations and citations omitted).

constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."[64] "This is a heavy burden. If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity."[65]

Courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[66] As discussed, Trooper Buck had probable cause and there was no violation of a federal or statutory right.[67] In addition, even assuming a violation, there was no clearly established right and therefore qualified immunity applies.

    a.    **No Violation of Clearly Established Law.**

In order to determine whether a right was clearly established, the court asks "whether 'the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"[68] A plaintiff may demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits.[69] The Supreme Court has repeatedly

---

[64] *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016) (quotations omitted).

[65] *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017).

[66] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[67] *Supra* at 8-10.

[68] *Henderson v. Glanz,* 813 F.3d 938, 951 (10th Cir. 2015) (*quoting Ashcroft v. Al-Kidd,* 563 U.S. 731, 741 (2011) (other citation omitted); *see also Wesby*, 138 S. Ct. at 590 (*quoting Saucier v. Katz*, 533 U.S. 194, 202 (2001) (The rule must be defined with enough specificity that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted.")).

[69] *Id.*

counseled "not to define clearly established law at a high level of generality."[70] Rather, the dispositive question is "whether the violative nature of *particular* conduct is clearly established."[71] The specificity needed for the clearly established law requirement is especially important in Fourth Amendment probable cause cases.[72] With respect to probable cause, relevant law must show that the law is clearly established and "beyond debate".[73]

Ms. Calhoun is unable to show that an affirmative duty to release "was clearly established at the time of the conduct at issue."[74] The Tenth Circuit has unambiguously held that there is no clearly established law imposing a duty to release.[75] Moreover, the duty is not recognized by "the clearly established weight of authority of other courts."[76] Indeed, "[t]he majority of courts have never imposed such a duty, much less under circumstances similar enough to make the contours of the right … sufficiently clear that a reasonable officer [ ] would understand that [their] actions violated that right."[77]

---

[70] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (*quoting Aschcroft*, 563 U.S. at 741).

[71] *Id.* (Emphasis in original).

[72] *Wesby*, 138 S. Ct. at 590.

[73] *Id.*

[74] *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).

[75] *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1131 (10th Cir. 2013).

[76] *Id.*

[77] *Id.*

Given the Tenth Circuit's clear pronouncement,[78] this Court concludes that even if, as Calhoun argues, a .037 BAC eliminated probable cause to arrest and detain her for DUI, Buck was not on notice of a recognized duty to release her and is therefore entitled to qualified immunity.

**IV.     Amendment Would Be Futile**

Ms. Calhoun argues she should be given an opportunity to amend her complaint. She has, however, has already amended her complaint twice, and does not identify any specific grounds for further amendment.[79] Plaintiff's second amended complaint and exhibits present a detailed picture of the events at issue. Accordingly, after review of the materials and the relevant legal authority, the court does not discern any additional facts that Ms. Calhoun could plead to state a plausible claim for relief. Therefore, Defendant's motion to dismiss is granted with prejudice.[80]

---

[78] *Id.*

[79] *See In Re Gold Resource Corp. Securities Litigation,* 776 F.3d 1103, 1118-19 (10th Cir. 2015) (*citing Calderon v. Kansas Dept. of Social & Rehabilitation Services,* 181 F.3d 1180, 187 (10th Cir. 1999)).

[80] *See Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (dismissal with prejudice is appropriate where complaint fails to state a claim and amendment would be futile).

## **ORDER**

IT IS ORDERED that Defendant's Motion to dismiss with prejudice is GRANTED.[81]

Plaintiff's Second Amended Complaint is dismissed with prejudice.

Dated this 5th day of April, 2019.

BY THE COURT:

_____
Dustin B. Pead
U.S. Magistrate Judge

---

[81] ECF No. 36.